UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Minnesota Towers, Inc., et al.,  
a Delaware corporation;  
American Cellular Corporation,  
a Delaware corporation; and  
James Bechtold,

        Plaintiffs,

v.

City of Duluth,

        Defendant.

Civil No. 04-5068 (DWF/RLE)

**MEMORANDUM OPINION AND ORDER**

_____

Lawrence A. Moloney, Esq., and Peter K. Beck, Esq., Gray Plant Mooty Mooty & Bennett - Minneapolis, counsel for Plaintiffs.

Mary Alison Lutterman, Esq., Duluth City Attorney's Office, counsel for Defendant.

_____

### Introduction

The above-entitled matter came before the undersigned United States District Judge on May 27, 2005, pursuant to a Motion for Partial Summary Judgment brought by Plaintiffs James Bechthold, Minnesota Towers, Inc., and American Cellular Corporation (collectively, "Plaintiffs").[1] In their

---

[1] Plaintiffs' motion was filed on April 12, 2005. Plaintiffs' briefing totaled 45 pages, well in contravention of the Local Rule at that time prescribing a total page limit of 35 pages. When the Court asked Plaintiffs at oral argument why the page limits had been exceeded, Plaintiffs' counsel told the Court that he was unaware of the existence of page limits. The Court reminds counsel that some

(continued...)

Complaint, Plaintiffs assert that the City of Duluth (the "City") wrongfully denied their application for a special use permit to build a telecommunications tower, and that such denial violated the Telecommunications Act of 1996, 47 U.S.C. § 332 ("TCA"); that the denial violated Plaintiffs procedural and substantive due process rights as guaranteed by the Fourteenth Amendment of the United States Constitution and thus 42 U.S.C. § 1983; that the denial constituted a taking of Plaintiffs' private property without just compensation in violation of the Fourteenth Amendment; that the denial contravened the Zoning Regulations for the City of Duluth and Minnesota common law; and that the City of Duluth's conduct violated the requirements of Minnesota Statute § 15.99.  For the reasons set forth below, Plaintiffs' Motion for Partial Summary Judgment is denied.

## Background

Plaintiff Minnesota Towers, Inc. ("Minnesota Towers") is a Delaware corporation with its principal place of business in the State of Michigan.  Minnesota Towers is in the business of citing, building, and providing communications towers and other facilities for personal wireless services, within the meaning of the TCA, 47 U.S.C. § 332(c)(7)(C).  Specifically, Minnesota Towers constructs towers and then leases space on the towers to providers of personal wireless services.  The space on the towers is used for antennae that transmit signals to cellular phones.

---

[1](...continued)
judges would find such conduct sanctionable.  Here, however, the Court merely reminds counsel that they are bound by the Local Rules and the obligations that the Local Rules impose.

Plaintiff American Cellular Corporation ("ACC"), doing business as Cellular One, is a Delaware corporation with its principal place of business in Duluth, Minnesota. ACC provides personal wireless services within the meaning of the TCA, 47 U.S.C. § 332(c)(7)(C)(i).

Plaintiff James Bechthold ("Bechthold") is a resident of the City of Duluth and the owner of property located at 2901 Morris Thomas Road in Duluth, Minnesota. Bechthold's property is the proposed site of the telecommunications tower that is the subject of this litigation. Minnesota Towers had agreed to lease the property from Bechthold for use as a telecommunications site.

At some point prior to this litigation ensuing, ACC determined that it needed to build a new telecommunications tower to serve the Piedmont Heights neighborhood of Duluth, an area that purportedly has many coverage gaps due to its hilly terrain. According to Plaintiffs, ACC and Minnesota Towers conducted a search to find land to site the proposed tower to serve areas that were not getting adequate cellular phone service. Two potential sites were considered: Bechthold's property, which was zoned C-2 (Highway Commercial),[2] and another site in an area zoned residential.

The Duluth zoning ordinance regulates placement of personal wireless communications service towers. (AR 000117.) Section 50-35 states:

> These towers shall include all towers and poles over 50 feet high used to provide "personal wireless services" as defined in 47 USCS § 332(c)(7)(C)(i), including those commonly known as cellular telephone towers or personal communications services

---

[2] Bechthold's property is surrounded by undeveloped land and residential homes. Bechthold's property was zoned residential until August 2004, when it was re-zoned commercial to accommodate a car repair/mechanic business that Bechthold intended to run out of his home. At least one neighbor has implied that Bechthold knew about the wireless service providers' intentions to use the property for a cell phone tower prior to when Bechthold obtained his neighbors' signatures to allow for the re-zoning. *See* AR 000109-110.

3

> (PCS) towers. The following standards shall apply to the considerations of special use permits for these towers:
>
> (1) No permit decision shall unreasonably discriminate among providers of functionally equivalent services;
> (2) No permit decision shall have the effect of prohibiting personal wireless services in an area;
> (3) No permit decision shall be based on the environmental effects of radio frequency emissions if the proposed tower complies with all applicable federal communications commission regulations;
> (4) Any decision to deny a permit for these towers must be made in writing and supported by substantial evidence contained in a written record;
> (5) The construction of new towers shall, where possible, be avoided when there are existing high buildings or other structures in the area that can reasonably be used to house the telecommunications facilities;
> (6) Whenever possible, new towers shall be built in zones for manufacturing or commercial uses as opposed to zones for residential uses;
> (7) New towers shall, where possible, be constructed to accommodate multiple telecommunications users and thus minimize the proliferation of the towers, if such multiple use capacity can be attained using reasonable height limitations;
> (8) New towers shall, where reasonably possible, be designed to blend into the proposed site so as to minimize its visual impact on the surrounding area;
> (9) Telecommunications facilities and equipment used in conjunction with the tower shall not create unacceptable noise levels for the surrounding area;
> (10) New towers shall comply with all applicable laws, including, but not limited to, the state building code and federal communications and aeronautics statutes, rules, and regulations.

(AR 000117.) Plaintiffs contend that because Section 50-35(ff)(6) indicates that telecommunications sites be located in non-residential areas where reasonably possible, Plaintiffs determined that Bechthold's property was the only viable option.

On September 29, 2004, Plaintiffs filed an application for a special use permit with the City of Duluth. In their application, Plaintiffs sought to erect a 195-foot monopole telecommunications tower designed to hold five wireless tenants, equipment, cabinets, and buildings on a portion of Bechthold's

property. Pursuant to the City's procedures, the application was submitted to the Duluth Planning Commission ("the Commission").

On October 27, 2004, the Commission held a public hearing on the application. Charles Froseth, Senior Planner for the City of Duluth, contends that prior to October 22, 2004, he sent a letter to the applicants advising them of the time of the hearing date and that the time for the Commission's consideration of the application was being extended pursuant to Minnesota Statutes § 15.99.[3] (Affidavit of Charles Froseth ("Froseth Aff.") at ¶¶ 5-6, Ex. 1).[4] Plaintiffs deny having received this letter.

Rick Adams from Minnesota Towers presented evidence about the need for an additional telecommunications tower at the October 27, 2004, Commission meeting. (AR 000335-364.) The Commission voted to table the request and requested additional information from Minnesota Towers and ACC. Minnesota Towers submitted additional information, including a letter from Sprint that, without detail, stated that Sprint did not have adequate personal wireless service coverage in the Piedmont Heights area. (AR 000082.)

---

[3] Minnesota Statute § 15.99 provides that the City has 60 days to respond to a zoning request, but that such time may be extended "before the end of the initial 60-day period by providing written notice of the extension to the applicant." Minn. Stat. § 15.99, subd. 3(f). Such extension may not exceed 60 days unless the applicant approves such extension. *Id*.

[4] Exhibit 1 is a copy of the letter purportedly sent to Bechthold and Rick Adams of Minnesota Towers, dated November 3, 2004. Froseth claims this letter was sent on approximately October 14, 2004, along with the public notice regarding the Planning Commission meeting. Froseth asserts, however, that when he printed out the letter to add to the Planning Department file for the matter, the auto-date function was set on his computer and automatically changed the date of the letter to the current date of the print request and modified the original file. Froseth was unable to print out a version of the original letter. (Froseth Aff. at ¶ 5.)

The Commission held another public hearing on the application on November 9, 2004. Rick Adams again testified on behalf of Minnesota Towers. By a vote of 7-1-1, the Planning Commission recommended in Resolution 04-0758R to grant the special use permit.

On November 22, 2004, the Duluth City Council (the "City Council") held a public hearing on Resolution 04-0758R. The City Council voted not to approve Resolution 04-0758R. Plaintiffs assert, however, that the City Council's vote was on its decision not to approve Resolution 04-0758R, but that the vote was not a decision to deny the application for the special use permit. Regardless, the City Attorney sent a letter to the applicants on November 23, 2004, in support of the City Council's denial of the special use permit. On December 6, 2004, the City Council considered Resolution 04-0802, which ratified the denial of the special use permit and stated the City Council's findings and reasons for the denial.

## Discussion

### I. Standard of Review

Summary judgment is proper if there are no disputed issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The court must view the evidence and the inferences that may be reasonably drawn from the evidence in the light most favorable to the nonmoving party. *Enter. Bank v. Magna Bank of Missouri*, 92 F.3d 743, 747 (8th Cir. 1996). However, as the Supreme Court has stated, "[s]ummary judgment procedure is properly regarded not as a disfavored procedural shortcut, but rather as an integral part of the Federal Rules as a whole, which are designed 'to secure the just, speedy, and inexpensive determination of every action.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986) (quoting Fed. R. Civ. P. 1).

The moving party bears the burden of showing that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law. *Enter. Bank*, 92 F.3d at 747. The nonmoving party must demonstrate the existence of specific facts in the record which create a genuine issue for trial. *Krenik v. County of Le Sueur*, 47 F.3d 953, 957 (8th Cir. 1995). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials, but must set forth specific facts showing that there is a genuine issue for trial. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986); *Krenik*, 47 F.3d at 957.

## II.   Minnesota Statute § 15.99

Plaintiffs contend that the City's action denying the Plaintiffs' application for the special use permit was untimely, resulting in an approval as a matter of law. Specifically, Plaintiffs assert that they never received the letter from Charles Froseth purportedly extending the time limit on the City Council's decision pursuant to Minnesota Statutes § 15.99, subd. 3(f). Plaintiffs contend that the City Council's resolution with written findings supporting a denial of the special use permit application did not occur until December 6, 2004, beyond the 60-day period allowed under § 15.99. Thus, Plaintiffs assert that the City Council's failure to deny the special use permit application within the 60-day period resulted in an approval pursuant to Minnesota Statutes § 15.99, subd. 2(a) ("Failure of an agency to deny a request within 60 days is approval of the request."). The City, on the other hand, maintains that Charles Froseth sent the letter to Plaintiffs regarding the time extension and that, as a result, the City's decision was made well within the time limits specified in Minnesota Statues § 15.99.

Considering the dispute among the parties, the Court finds that a genuine issue of fact exists as to whether Charles Froseth sent a letter to Plaintiffs to notify them of the time extension. As such, Plaintiffs' Motion for Summary Judgment is denied in this regard.

In the alternative, and in response to Plaintiffs' motion, the City asserts that even without the application of the § 15.99 time extension, the City's denial was timely because the City Council stated its reasons for denial on the record at the City Council meeting on November 22, 2004, and thus within 60 days of the Plaintiffs' application. The City contends that it complied with the deadlines set forth in Minnesota Statutes § 15.99, subd. 2(b).

Section 15.99, subdivision 2, titled "Deadline for response," provides:

(a) Except as otherwise provided in this section, section 462.358, subdivision 3b, or chapter 505, and notwithstanding any other law to the contrary, an agency must approve or deny within 60 days a written request relating to zoning, septic systems, or expansion of the metropolitan urban service area for a permit, license or other governmental approval of an action. Failure of an agency to deny a request within 60 days is approval of the request. If an agency denies the request, it must state in writing the reasons for the denial at the time that it denies the request.

(b) When a vote on a resolution or properly made motion to approve a request fails for any reason, the failure shall constitute a denial of the request provided that those voting against the motion state on the record the reasons why they oppose the request. A denial of a request because of a failure to approve a resolution or motion does not preclude an immediate submission of a same or similar request.

(c) Except as provided by paragraph (b), if an agency, other than a multimember governing body, denies the request, it must state in writing the reasons for the denial at the time that it denies the request. If a multimember governing body denies a request, it must state the reasons for denial on the record and provide the applicant in writing a statement of the reasons for the denial. If the written statement is not adopted at the same time as the denial, it must be adopted at the next meeting following the denial of the request but before the expiration of the time allowed for making a decision under this section. The written statement must be consistent with the reasons stated in the

record at the time of the denial.  The written statement must be provided to the
applicant upon adoption.

Plaintiffs counter that the City Council did not vote on the written resolution to actually deny the special use permit application until the City Council's December 6, 2004, meeting, and that such resolution was outside the 60-day window required by § 15.99.  Plaintiffs contend that the failure of Resolution 04-0758 (the Planning Commission's resolution approving the request for a special use permit) alone does not constitute a final decision by the City.  Plaintiffs rely upon the provision of subdivision 2(a) requiring that the City state in writing its reasons for denial at the time that it denies the request.  Minn. Stat. § 15.99, subd. 2(a).  And, Plaintiffs look to subdivision 2(c), which states that if a written statement stating the reasons for denial "is not adopted at the same time as the denial, it must be adopted at the next meeting following the denial of the request but before the expiration of the time allowed for making a decision under this section."  Minn. Stat. § 15.99, subd. 2(c).  The City contends that subdivision 2(b) stands alone, however, and does not require such a writing requirement when the City Council denies a request by voting not to approve a resolution to grant the permit.  The City also contends that the November 23, 2004, letter from Bryan F. Brown, Duluth City Attorney, to Plaintiffs was sufficient to comply with the requirements of § 15.99.  (AR 000326.)

The Court finds that the failure of the resolution before the City Council, accompanied by the City Council's oral reasoning on the record, was not sufficient to comply fully with the requirements of § 15.99, subdivision 2.  Section 15.99, subdivision 2(b), allows for the City Council to deny a request by voting down a resolution and stating on the record the reasons why it opposed the request.  Subdivision 2(b) addresses what constitutes a denial, but it does not obviate the need for the City

9

Council to adopt a written statement documenting such reasoning "before the expiration of the time allowed for making a decision under this section" pursuant to subdivision 2(c). The City Council's adoption of the written resolution did not occur until December 6, 2004, and thus did not fall within the 60-day deadline required by § 15.99.

Moreover, the Court finds that the November 23, 2004**,** letter from Bryan Brown was not sufficient to comply with § 15.99. As noted above, subdivision 2(c) requires that "[i]f the written statement is not adopted at the same time as the denial, it must be adopted at the next meeting following the denial of the request but before the expiration of the time allowed for making a decision under this section." Minn. Stat. § 15.99, subd. 2(c). The operative language in the statute is the word "adopted," requiring some official action by the City Council, and not just a letter from the City's Attorney reiterating the findings from the meeting.

As noted above, a genuine issue of material fact remains as to whether the City extended its time to respond to Plaintiffs' request for a special use permit to 120 days, pursuant to § 15.99, subd. 3(f). Thus, if a factfinder were to determine that the City did extend the time for response by virtue of the letter purportedly sent by Charles Froseth to Plaintiffs in October 2004, the City necessarily would have complied with the statutory requirements of a written statement set forth in § 15.99, subdivision 2, by virtue of the City Council's adoption of the written findings at its December 6, 2004, meeting. If, on the other hand, a factfinder were to determine that the City did not extend its time to respond to Plaintiffs' request for a special use permit, the request would be deemed approved by the City's failure to respond within 60 days, pursuant to Minnesota Statutes § 15.99, subd. 2(a).

**III.    The TCA**

The TCA provides that "[a]ny decision by a State or local government or instrumentality thereof to deny a request to place, construct, or modify personal wireless service facilities shall be in writing and supported by substantial evidence contained in a written record." 47 U.S.C. § 332(c)(7)(B)(iii). In addition, the TCA prevents state and local governments from regulating the placement and construction of personal wireless facilities if it "prohibit[s] or [has] the effect of prohibiting the provision of personal wireless services." 47 U.S.C. § 332(c)(7)(B)(i)(II).

### A.   Substantial Evidence

Plaintiffs assert that the City's denial of its request is not supported by "substantial evidence" as required by the TCA. The City Council made the following findings with regard to its reason for denial of the special use permit application:

> (1) Property values in the immediate area will be significantly diminished by the presence of a 195 foot tower.
>
> (2) This denial does not have the effect of prohibiting personal wireless services in the area as there is already adequate cellular phone coverage in the area.
>
> (3) The height of the tower in its proximity to neighboring homes creates a hazard from blowing snow and ice as well as potential dangers from the proximity of the tower itself, should it fail structurally.
>
> (4) The tower height requested is not the "least intrusive means" of achieving services in the area.
>
> (5) Other potential tower sites have not been evaluated.
>
> (6) The 195 foot tower does not blend into the surrounding area, and the plans submitted do not show any attempt to alter its appearance to more appropriately match the character of the surroundings.

(AR 000332.)

As a preliminary matter, the parties disagree about who bears the burden of proof as to this issue. Plaintiffs contend that the City bears the burden of showing that its decision was supported by substantial evidence on the record. *See*, *e.g., APT Minneapolis, Inc. v. City of Maplewood,* Civ. No. 97-2082, 1998 WL 634224 at *4 (D.Minn. Aug. 12, 1998) (Tunheim, J.)). The City, on the other hand, asserts that the party seeking to overturn the denial bears the burden of proving that the decision was not supported by substantial evidence. *See, e.g., Voicestream Minneapolis, Inc., v. St. Croix Cnty.*, 342 F.3d 818, 830 (7th Cir. 2003) (citing *American Tower LP v. City of Huntsville*, 295 F.3d 1203, 1207 (11th Cir. 2002)). The Eighth Circuit has yet to issue an opinion on the issue. However, the Court need not reach this issue. Regardless of who bears the burden of proof, the Court finds that the City's findings for denying the special use permit, namely, the findings regarding diminished property values and aesthetic impact, were supported by substantial evidence on the record.

        **1.**     **Property Values**

The City Council found that "Property values in the immediate area will be significantly diminished by the presence of a 195 foot tower." (AR 000332.) Plaintiffs contend that the only competent evidence in the record was to the contrary. Specifically, Plaintiffs point to a 1996 study written by Certified General Real Property Appraiser Scott Ruppert, entitled "Real Estate Value Impact Study, Issue: Do communication towers have an impact on the market value of residential properties in close proximity" (the "Ruppert Study") (AR 000228-256.) The Ruppert Study analyzed three study areas located in Stillwater, Golden Valley, and New Hope, Minnesota, and concluded that there was no measurable difference in the market value of properties in close proximity to telecommunications towers and those properties that were farther away. (AR 000231.)

The City asserts that it relied upon a petition signed by 72 citizens in the area neighboring the proposed site, who stated that they believed the proposed telecommunications tower would lower their property value. These citizens based their opinions, in part, on aesthetic concerns and on the perceived health concerns associated with telecommunications towers, as enumerated in several published articles related to health issues associated with radio frequency exposure. *(See* AR 000276-295.) Further, the record contains the opinion of a mortgage loan officer that a 195-foot tower would have a negative impact on the property values of adjacent and neighboring landowners. (AR 000334.) Plaintiffs contend that the Court should not consider residents' subjective concerns or the opinion of the mortgage loan officer.

The Court finds that the record contains substantial evidence to support the City Council's conclusion that the proposed telecommunications tower would affect property values. First, the Court finds that the Ruppert Study is not sufficient to describe the potential impact of the proposed tower on property values in the Duluth area. The Ruppert Study is not recent and its conclusions are based on a review of suburban and exurban property values in New Hope, Golden Valley, and Stillwater that are not similar to those in the Duluth area. Second, although the Court agrees with Plaintiffs that generalized concerns regarding reduced property values are not sufficient to constitute the requisite substantial evidence necessary to support the denial of the application, the legitimate lay opinions of neighboring landowners are valid evidence of a diminishment of market values. Finally, although the City may not consider the environmental effects of radio frequency emissions when deciding whether to allow placement of a telecommunications tower (47 U.S.C. § 332(c)(7)(B)(iv)), this does not prevent the marketplace from considering health concerns as a factor in assessing the potential diminished

13

market value of property near a 195-foot tower. Based on the information that was before the City Council, the Court finds that the City Council's determination that property values would be significantly diminished by the presence of a 195-foot tower was based on substantial evidence on the record.

### 2.     Aesthetic Concerns

The City Council found that the proposed tower's height was not the "least intrusive means" of achieving service in the area, that it did not blend into the surrounding area, and that the applicants did not alter the plans to attempt to match the surrounding area. In addition, the City Council found that other potential sites had not been evaluated. (AR 000332.) These findings address Duluth Zoning Ordinances § 50.35(ff)(5)-(8). Plaintiffs assert that these findings are not supported by substantial evidence because Plaintiffs investigated whether existing high building structures in the area could reasonably be used to house the telecommunication facilities and determined that no such structures were available. In addition, Plaintiffs assert that they proposed to build "in zones for manufacturing or commercial use as opposed to zones for residential uses," that they designed the facility to accommodate multiple telecommunication users and thus minimize the proliferation of the towers, and that they attempted to blend the tower into the proposed site by hiding cables, offering to paint the tower light blue to blend in better, and selecting a spot where mature trees provide screening.

In addition to the petition signed by the 72 neighboring residents as to the unattractiveness of the proposed tower, the record also contains sufficient photographic evidence of the proposed tower's visual height impact. (AR 000310.) Considering the unsightly visual impact of a 195-foot structure standing well above the treeline in a wooded residential neighborhood, the Court finds that substantial evidence existed on the record to support the City Council's aesthetic findings. *See Voicestream*, 342

F.3d at 831 ("[E]very circuit to consider the issue has determined that aesthetics may constitute a valid basis for denial of a wireless permit if substantial evidence of the visual impact of the tower was before the board."). In addition, the Court finds that although Plaintiffs considered other alternatives to the proposed site, "these alternatives were not pursued such that [Plaintiffs] thoroughly investigated the viability of other alternatives." *Voicestream*, 342 F.3d at 835.

In sum, the record demonstrates that substantial evidence existed to support the City Council's determination that the proposed tower was not designed to blend in with its surroundings, and that it would diminish property values in the neighborhood. The parties have also addressed the City's findings regarding hazards and adequate coverage. The Court finds that the record is inconclusive as to these findings. However, because at least two of the City Council's findings are supported by substantial evidence on the record, the City Council's decision did not violate the substantial evidence requirement of 47 U.S.C. § 332(c)(7)(B)(iii).

**B.     Prohibitive Effect**

Plaintiffs contend that the City's denial of their special use permit application had the effect of prohibiting personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). The provider bears the heavy burden to demonstrate "not just that this application has been rejected but that further reasonable efforts are so likely to be fruitless that it is a waste of time even to try." *Second Generation Properties, L.P. v. Town of Pelham*, 313 F.3d at 620, 635 (1st Cir. 2002); *see also Voicestream*, 342 F.3d at 834. Considering the Court's determination that Plaintiffs did not thoroughly investigate other viable alternatives, the City's denial does not prohibit or have the effect of prohibiting personal wireless services in violation of 47 U.S.C. § 332(c)(7)(B)(i)(II). *Voicestream*, 342 F.3d at 835.

15

### IV.     Duluth's Zoning Ordinances

Finally, Plaintiffs contend that in denying the special use permit, the City acted in contravention of its own zoning ordinances. The Court disagrees. The City determined that the proposed tower did not blend into the proposed area. *See* Duluth Zoning Ordinances § 50.35(ff)(8). Moreover, the City's determination regarding the visual impact was, in effect, a determination that the proposed tower did not have a "reasonable height limitation." *Id.* at § 50.35(ff)(7).

### Conclusion

The issue left to be decided by a jury is whether the City of Duluth extended its time for response to Plaintiffs' application for a special use permit pursuant to Minnesota Statutes § 15.99, subd. 2(f). Considering the limited nature of what remains to be decided, the Court finds that it may be in the best interests of the parties to attempt to negotiate a settlement in this dispute among themselves. As the parties may be aware, Magistrate Judge Raymond L. Erickson is available to assist in the negotiation of a settlement should the parties find such services helpful. If the Court may be of assistance in this matter, the parties should contact Lowell Lindquist, Calendar Clerk for Judge Donovan W. Frank, at 651-848-1296, or Vicki Miller, Calendar Clerk for Judge Raymond L. Erickson, at 218-529-3520.

For the reasons stated, **IT IS HEREBY ORDERED**:

1.     Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 12) is **DENIED**.

Dated:     July 1, 2005             s/Donovan W. Frank
                                    DONOVAN W. FRANK
                                    Judge of United States District Court